1  **WO**

2

3

4                    **NOT FOR PUBLICATION**

5          IN THE UNITED STATES DISTRICT COURT

6              FOR THE DISTRICT OF ARIZONA

7

8  Sanford H. Roth, M.D., et al.,        )    No. CV-04-2135-PHX-FJM
                                         )
9               Plaintiffs,              )    **ORDER**
                                         )
10 vs.                                   )
                                         )
11                                       )
   Naturally Vitamin Supplements, Inc., et)
12 al.,                                  )
                Defendants.              )
13                                       )
   _____)
14

15

16

17         The court has before it plaintiffs' Motion for Partial Summary Judgment (doc. 40),

18 defendants' Response (doc. 44), and plaintiffs' Reply (doc. 48).

19         Plaintiff Sanford Roth, M.D. is a licensed physician.  Plaintiff Arizona Research and

20 Education, Ltd. is an entity owned by Dr. Roth, through which Dr. Roth contracts and bills

   for his consulting services.  Defendant Marlyn Neutraceuticals, Inc., doing business as
21
   Naturally Vitamin Supplements, Inc., (collectively, "Naturally Vitamin") manufactures and
22
   sells vitamins and nutritional supplements, including Wobenzym, a systemic enzyme product
23
   used by individuals suffering from arthritis.
24
           On May 6, 2002, Naturally Vitamin and Dr. Roth entered into a written agreement
25
   ("Consulting Agreement") whereby Dr. Roth agreed to "provide consultation and expert
26
   advice related to the evaluation and education of healthcare professionals and consumers
27
   related to [Naturally Vitamin's] products."  <u>DSOF</u>, Exhibit A ¶ 3.  It was agreed that
28

1   Naturally Vitamin would compensate Roth at a rate of $400 per hour for services provided

2   under the Agreement.  Id. ¶ 4(b).

3          Dr. Roth filed this action alleging, among other things, that Naturally Vitamin failed

4   to compensate him for services rendered under the Consulting Agreement (Count I);

5   breached its covenant of good faith and fair dealing (Count II); and violated his common law

6   right of publicity (Count V), and the Lanham Act (Count VI), by using his identity for

7   commercial advantage without his consent.  Roth now moves for summary judgment on

8   Count I and partial summary judgment, with respect to liability only, on Counts II, V, and

9   VI.                            **Count I - Breach of Contract**

10         In Count I of the Complaint, Roth contends that Naturally Vitamin breached the

11  Consulting Agreement by failing to compensate him for the work he performed on three

12  different projects.  In June 2003, Naturally Vitamin asked Roth to prepare an article, entitled

13  "Efficiency and Safety of Oral Enzyme Therapy" (the "Article"), which Roth subsequently

14  presented at a meeting of the Arizona Rheumatology Society at Naturally Vitamin's request.

15  In July 2003, Naturally Vitamin asked Roth to prepare a protocol and budget (the "Protocol

16  and Budget") for a study comparing Naturally Vitamin's Wobenzym product against the

17  product "Celebrex."  Finally, in August 2003, Naturally Vitamin asked Roth to give an

18  interview (the "Medco Interview") related to his research on systemic enzyme treatment.

19  Roth claims that Naturally Vitamin has refused to compensate him for at least 32 hours of

20  work on these projects, or a total amount due of $12,800.  PSOF ¶¶ 23-27.

21         Naturally Vitamin does not dispute that Roth performed these services on its behalf.

22  Instead, it argues that Roth is not entitled to any compensation under the Consulting

23  Agreement because (1) the Consulting Agreement had expired at the time the work was

24  performed; and (2) Roth did not provide an estimate of hours needed to complete each

25  project, or invoices for the work performed, as required by the Agreement.

26         The Consulting Agreement had a one-year term, expiring on May 6, 2003, unless it

27  was renewed "upon the mutual written agreement of [the parties]."  DSOF, Exhibit A ¶ 2.

28  The Agreement further provided that it could "not be amended or modified except in writing

1    signed by the parties."  Id. ¶ 17.  There is no allegation that there was a formal, written

2    extension of the term of the Agreement; therefore, the Agreement expired by its own terms

3    on May 6, 2003.  Roth nevertheless contends that conduct of the parties, as well as written

4    documentation in the form of emails between Roth and Naturally Vitamin outlining work to

5    be performed, and accounting records showing invoices and payments after May 6th,

6    evidence that both parties operated as if the Agreement remained in effect.  Accordingly,

7    Roth argues that this conduct effectively served to extend the Consulting Agreement.  We

8    agree.

9         Implied in fact contracts are recognized as legally enforceable contractual agreements

10   under Arizona law.  See, e.g., Ariz. Bd. of Regents v. Ariz. York Refrigeration Co., 115 Ariz.

11   338, 341, 565 P.2d 518, 521 (1977).  "An implied contract is one not created or evidenced

12   by explicit agreement, but inferred by law as a matter of reason and justice from the acts and

13   conduct of the parties and the circumstances surrounding their transaction."  Id.  "When an

14   agreement expires by its terms, if, without more, the parties continue to perform as

15   theretofore, an implication arises that they have mutually assented to a new contract

16   containing the same provisions as the old."  Autohaus Brugger, Inc. v. Saab Motors, Inc., 567

17   F.2d 901, 915 (9th Cir. 1978) (quoting Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir.

18   1946), cert. denied, 329 U.S. 759, 67 S. Ct. 112 (1946)).

19        The undisputed facts indicate that after the May 6, 2003 expiration, Naturally Vitamin

20   continued to ask Roth to perform services on its behalf.  Roth, in turn, performed the services

21   and sought payment according to the terms of the Consulting Agreement.   Naturally

22   Vitamin's accounting records acknowledge invoices for services rendered by Roth after May

23   6, 2003, as well as payments for some of these post-expiration services.  DSOF, Exhibit H.

24   We conclude that the conduct of the parties manifested an intent to establish an implied in

25   fact contract based on the terms of the expired express agreement.  Therefore, Naturally

26   Vitamin breached its obligation to compensate Roth for services performed at the contract

27   rate of $400.00 an hour.  Because there is a genuine issue as to whether Roth has been

28

1  partially compensated for work performed in relation to the Protocol and Budget, we do not
2  decide the amount of damages related to this breach.

3      We reject Naturally Vitamin's argument that Roth is not entitled to any compensation
4  under the Consulting Agreement because he failed to provide an estimate of hours required
5  for the projects.  First, there is no allegation that Naturally Vitamin ever required an estimate,
6  or objected to Roth's failure to submit one.  Naturally Vitamin's acceptance of Roth's services
7  without requesting an estimate constitutes a waiver of its right to such an estimate.  Similarly,
8  even assuming Roth's failure to submit timely invoices constituted a breach of the
9  Agreement, this breach is not so material as to excuse Naturally Vitamin's payment
10 obligation.

11     Based on the foregoing, we grant Roth's motion for summary judgment on Count I
12 with respect to liability, and deny the motion with respect to damages.

13                **Count II - Breach of Duty of Good Faith and Fair Dealing**

14     In Count II of the Complaint, Roth alleges that Naturally Vitamin breached its duty
15 of good faith and fair dealing under the Consulting Agreement[1] when it published the Medco
16 Interview containing an incorrect statement attributed to Roth, and then failed to correct or
17 retract the false statement once it was published.

18     The essence of the duty of good faith and fair dealing is that neither party will act to
19 impair the right of the other to receive the benefits that flow from their agreement or
20 contractual relationship.  Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons,
21 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002).

22     In the present case, prior to its publication, Naturally Vitamin provided Roth with a
23 draft of the Medco Interview for his review, containing the incorrect statement, presumably
24 by Roth, that the FDA had approved enzyme therapy for arthritis treatment.  On August 21,

25

26     [1]We reject Naturally Vitamin's argument that it could not have breached its duty of
27 good faith and fair dealing because the Consulting Agreement had expired.  As stated
   previously, an implied in fact contract existed based on the same terms as the expired express
28 agreement, including the implied covenant of good faith and fair dealing.

2003, Roth initially approved the draft; however, on September 5, 2003, he discovered the error and sent an email to Naturally Vitamin, stating the "FDA Approval statement" is a "serious misstatement," and asking Naturally Vitamin to have the statement corrected. PSOF, Exhibit 5, p. 192.  The parties disagree as to whether Naturally Vitamin received Roth's email before or after the article was published, and therefore dispute whether Naturally Vitamin could have corrected the article before publication.  In any event, it is clear that Naturally Vitamin made no effort to have the article corrected or retracted after its publication.  A material issue of fact exists as to whether Naturally Vitamin could have prevented the article's publication after receiving Roth's correction.  Further, a material issue of fact exists as to whether it was reasonable for Roth to assume that Naturally Vitamin's duty of good faith and fair dealing obligated it to ensure a correction/retraction once the article was approved by Roth and published.  These are questions for a jury.  See Wells Fargo, 201 Ariz. at 493, 38 P.3d at 31 (concluding that a question of fact exists as to whether defendant's actions (or inaction) were inconsistent with what the plaintiff reasonably expected under the agreement).  Accordingly, we deny Roth's motion for summary judgment on Count II.

### Count V - Common Law Right of Publicity

Roth next contends that Naturally Vitamin violated his common law right of publicity when it appropriated the commercial value of his name and image without his consent.  In order to establish a claim for violation of the right of publicity, a person must establish (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercial or otherwise; (3) lack of consent; and (4) resulting injury.  Pooley v. Nat'l Hole-in-One Ass'n, 89 F. Supp. 2d 1108, 1111-12 (D. Ariz. 2000).[2]

---

[2]Arizona has not recognized a claim for the right of publicity.  In the absence of Arizona law to the contrary, courts apply the Restatement.  Estate of Walton, 164 Ariz. 498, 500, 794 P.2d 131, 133 (1990).  We follow the application of the Restatement set forth in Pooley, 89 F. Supp. 2d 1108 (D. Ariz. 2000).

1    In early 2002, Naturally Vitamin agreed to sponsor a segment of the Arthritis

2    Foundation's May 2002 "All About Arthritis" "televent."   In connection with that

3    sponsorship, Naturally Vitamin agreed to contribute $10,000 to the Arthritis Foundation.

4    Naturally Vitamin's segment of the televent included an interview with Dr. Roth, in which

5    Roth discussed his research on the use of systemic enzymes in the treatment of arthritis

6    ("Roth Segment").   During the segment, Roth did not mention or endorse any Naturally

7    Vitamin product, including Wobenzym, although the Wobenzym trademark was present in

8    the corner of the screen throughout the interview.

9    Roth contends that he agreed to do the interview solely for the purpose of the Arthritis

10   Foundation televent; nevertheless, Naturally Vitamin subsequently removed the Roth

11   Segment from the context of the overall televent, and placed it on Naturally Vitamin's

12   commercial websites.  Roth contends that this was done without his permission and created

13   the false impression that Dr. Roth was endorsing Naturally Vitamin's product, Wobenzym.

14   Roth has satisfied the first two prongs of the right of publicity test.  It is clear that

15   Naturally Vitamin used Roth's identity for its commercial advantage.  Naturally Vitamin,

16   nevertheless, contends that there was no violation of Roth's right to publicity because Roth

17   consented to the use of the Roth Segment on Naturally Vitamin's websites.  Specifically it

18   asserts that it not only paid Roth for production of the segment, but also agreed to sponsor

19   the video segment and make a $10,000 contribution to the Arthritis Foundation based on

20   Roth's consent to use of the Roth Segment on its websites.[3]  Naturally Vitamin submitted

21   affidavits of two of its employees, stating that Roth agreed that Naturally Vitamin could use

22   the Roth Segment on its websites to promote Wobenzym.  DSOF, Exhibits B, L.  We

23   conclude that these affidavits are sufficient to create an issue of fact as to whether Roth

24

25

26   [3]Although Naturally Vitamin agreed to pay $10,000 to the Arthritis Foundation in

27   order to sponsor the video segment, it appears that Naturally Vitamin never paid the
sponsorship.  This fact alone, however, does not defeat the argument that Roth consented to

28   the use of the Roth Segment on Naturally Vitamin's websites.

1    consented to the use of the Roth Segment on Naturally Vitamin's websites.  Therefore,

2    summary judgment is not appropriate on this issue.

3         In addition, Roth claims that Naturally Vitamin violated his right to publicity by

4    posting two press releases on its websites, one which implied that Roth's research included

5    Naturally Vitamin's Wobenzym products, and the other which expressly stated that Roth

6    "endorsed" Wobenzym.  PSOF ¶¶ 63-66.  In particular, the July 2003 press releases stated

7    in relevant part, "One recent study was conducted by Sanford Roth, M.D. . . . [which]

8    concluded that systemic oral enzymes of the type found in Wobenzym effectively normalize

9    the inflammatory response to ease joint discomfort."  PSOF, Exhibit 26.  The November

10   2003 press release provided in relevant part, "Roth recommends Wobenzym, the

11   nutraceutical version of the systemic enzymes he used in the study."  PSOF, Exhibit 27.

12        Again, Roth satisfied the first two elements of a right to publicity claim.  Naturally

13   Vitamin used Roth's identity and name in order to endorse its product for its commercial

14   advantage.  Naturally Vitamin does not assert that it obtained Roth's permission to use his

15   identity in the press releases; instead, it argues that there was no violation because the use

16   of Roth's  identity was only "incidental."

17        There is a recognized exception to the right to publicity doctrine where the use of a

18   person's identity is so "incidental" as to have no commercial value.  Pooley, 89 F. Supp. 2d

19   at 1112.  Such "incidental uses" may include the use of a person's identity in "news reporting,

20   commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental

21   to such uses."  Id. (emphasis omitted).  "Whether the incidental use doctrine is applicable is

22   determined by the role that the use plays with respect to the entire publication."  Id.  The

23   exception does not apply, however, where the use is significant to the defendant's commercial

24   purpose.  Id. at 1113.

25        There is no doubt that the use of Roth's identity and statement that Roth endorsed

26   Naturally Vitamin's product was intended to promote Naturally Vitamin's commercial

27   purposes.  The unauthorized use of Roth's identity in the press releases does not fall within

28

1    the incidental use exception, and therefore, the first three prongs of a right to publicity claim

2    have been satisfied.

3         Based on the foregoing, we deny partial summary judgment with respect to the right

4    to publicity claim based on the use of Roth's identity on Naturally Vitamin's websites because

5    a material issue of fact exists with respect to whether Roth consented to such use. We grant

6    partial summary judgment on Roth's right to publicity claim regarding the use of his identity

7    in Naturally Vitamin's press releases. Roth is left to show that he was injured by such use.

8                              **Count VI - Lanham Act**

9         Roth also claims that Naturally Vitamin's use of the Roth Segment on its websites and

10   in its press releases were false and misleading statements, and therefore constituted a false

11   endorsement in violation of the Lanham Act.   15 U.S.C. § 1125(a)(1)(A).   A false

12   endorsement claim is actionable under the Lanham Act where a party can show that the use

13   of any false or misleading representation of fact is "likely to deceive consumers as to the

14   association, sponsorship, or approval of goods or services by another person." Waits v. Frito-

15   Lay, Inc., 978 F.2d. 1093, 1107 (9th Cir. 1992); 15 U.S.C. § 1125(a)(1)(A).

16        Here, Roth claims the use of the Roth Segment on the websites, coupled with the

17   statement, "Dr. Sanford Roth . . . discusses the benefits of Wobenzym," PSOF ¶ 50,

18   constitutes a literally false or misleading representation as to Roth's endorsement of Naturally

19   Vitamin's products in violation of the Lanham Act. Roth claims that he never mentioned

20   Wobenzym in the Roth Segment, let alone discussed its benefits. Therefore, Roth contends

21   that the consumer is undeniably left with the false impression that he endorsed the benefits

22   of Naturally Vitamin's product.

23        Additionally, Roth contends that Naturally Vitamin's press releases similarly

24   constitute literally false and misleading statements of fact in violation of the Lanham Act.

25   The July 2003 press releases stated that the six-month "study [conducted by Roth] concluded

26   that systemic oral enzymes of the type found in Wobenzym effectively normalize the

27   inflammatory response to ease joint discomfort," PSOF ¶ 64 (emphasis added), when in fact

28   the study was conducted on Phlogenzym, a product distinct from Wobenzym. Moreover, the

November, 2003 press release stated that "Dr. Roth recommends Wobenzym, the nutraceutical version of the systemic enzymes he used in the [Phlogenzyme] study."  PSOF ¶ 64.  Dr. Roth claims that he has never "recommended Wobenzym."  Id.

In order to establish a claim under the Lanham Act, Roth must show a "false or misleading representation of fact."  15 U.S.C. § 1125(a)(1)(A).  Roth claims he has satisfied this burden because both the websites and the press releases are "literally false" in that they indicate that Roth endorses Wobenzym.

The question whether "Roth endorses Wobenzym" or whether "Roth discusses the benefits of Wobenzym" is inextricably intertwined with the question of whether Roth gave his consent to the use of the Roth Segment on the websites.  If he gave his consent, an argument could be made that he endorses the product.  We have already concluded that the issue of consent is a disputed question of fact that precludes summary judgment. Furthermore, while it is true that Roth never mentions Wobenzym during the Roth Segment, it is equally true that the Wobenzym logo is prominently displayed on the screen throughout the Roth Segment.  A jury could reasonably conclude that Roth's consent to the original production of the Roth Segment, including the display of the logo, a fact that appears to be undisputed, is evidence of Roth's endorsement of Wobenzym.

With respect to the July 2003 press releases, the statement the six-month "study concluded that systemic oral enzymes of the type found in Wobenzym effectively normalize the inflammatory response," appears to be a true statement.  It appears that the study was, in fact, conducted on some of the same enzymes found in Wobenzym.  Finally, an issue of material fact exists with respect to the statement in the November 2003 press release "Dr. Roth recommends Wobenzym."

Because issues of material fact remain, we deny Roth's motion for summary judgment on the Lanham Act claim.

**Conclusion**

Based on the foregoing, we grant summary judgment on Count I (breach of contract); we deny summary judgment on Count II (breach of duty of good faith and fair dealing); we grant partial summary judgment on Count V of the Complaint alleging a violation of the right to publicity based on the publication in the press releases, but we deny summary judgment on this Count related to the publication on the website; finally, we deny summary judgment on Count VI (Lanham Act).

**THEREFORE IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiff's Motion for Partial Summary Judgment (doc. 40).

DATED this 14th day of April, 2006.


_Frederick J. Martone_
Frederick J. Martone
United States District Judge