**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sanford H. Roth, M.D., et al., | No. CV-04-2135-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Naturally Vitamin Supplements, Inc., et al., | |
| Defendants. | |

The court has before it plaintiffs' motion for amendment of judgment and motion for allowance of attorneys' fees (doc. 158), defendants' response (doc. 169), and plaintiffs' reply (doc. 184); defendants' motion for new trial or in the alternative motion for remittitur (doc. 159), plaintiffs' response (doc. 175), and defendants' reply (doc. 187); defendants' renewed Rule 50 motion for judgment as a matter of law (doc. 204), plaintiffs' response (doc. 182), and defendants' reply (doc. 186). We also have before us defendants' motion to supplement their renewed Rule 50 motion for judgment as a matter of law (doc. 201), plaintiffs' response (doc. 202), and defendants' reply (doc. 205). Finally, we have before us plaintiffs' memorandum in support of their motion for attorneys' fees (doc. 188), defendants' response (doc. 192), and plaintiffs' reply (doc. 193).

**I. Naturally Vitamin's Rule 50(b) Motion**

The jury awarded Roth $500,000 on his breach of implied contract claim, $1.5 million on his right of publicity claim, and $800,000 on his Lanham Act claim. Pursuant to Rule 50(b), Fed. R. Civ. P., Naturally Vitamin renews its motion for judgment as a matter of law, arguing that Roth presented no evidence to establish the element of damages on any of the three claims.[1]

Judgment as a matter of law is appropriate only where there is "no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). Failure of proof on an essential element of a claim entitles the moving party to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986) ("the standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)" (quotation omitted). A renewed motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., is appropriate "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

**A. Breach of Implied Contract**

Under the breach of implied contract claim, Roth alleged that Naturally Vitamin promised to donate $10,000 to the Arthritis Foundation in exchange for his participation in a videotaped interview. Roth conducted the interview, but Naturally Vitamin failed to make the $10,000 contribution. The jury was instructed that damages on this claim were the "value of the services that Roth provided to the defendant." Jury Instructions at 10 (doc. 143).

---

[1] Naturally Vitamin also moves to supplement its Rule 50(b) motion in order to incorporate specific references to the trial transcript, stating, without explanation, that at the time the motion was filed "it did not have available the Trial Transcript." Motion to Supplement at 1 (doc. 201). Because Naturally Vitamin fails to demonstrate good cause for granting this belated motion, which will result in further delay of the final resolution of this case, the motion is denied (doc. 201). Nevertheless, we review the present motion with the benefit of the full transcript before us.

1  Evidence was presented that Roth commonly received $400.00 per hour as a consulting fee.
2  Tr. At 102, 222.  Evidence also showed that Naturally Vitamin failed to make the $10,000
3  contribution until the eve of trial, some four years after the payment was due.  This evidence
4  was sufficient to support a jury verdict finding that an implied contract existed, that Naturally
5  Vitamin breached the contract, and that Roth was damaged as a result.  Accordingly, we deny
6  the Rule 50(b) motion on this claim.  The denial of the Rule 50(b) motion is based on our
7  determination of the *fact* of damages.  The *amount* of damages is properly considered below
8  in the context of Naturally Vitamin's motion for new trial or alternative motion for remittitur.

### B.  Breach of Right of Publicity, Lanham Act

10  Naturally Vitamin also argues that Roth failed to present any evidence to support the
11 element of damages on the right of publicity or Lanham Act claims.  We disagree.  Roth
12 testified regarding his pain and suffering and damage to his reputation as a result of Naturally
13 Vitamin's wrongful use of his name, image, and statements.  Tr. at 220-21, 383-84.
14 Additional evidence was presented to demonstrate that Roth typically charged sizeable fees
15 for his consulting services.  Tr. at 102, 154, 222, 250.  This evidence was sufficient to
16 support the jury's conclusion that Roth was damaged as a result of Naturally Vitamin's
17 conduct.  The Rule 50(b) motion for judgment as a matter of law is denied (doc. 204).

### II.  Naturally Vitamin's Motion for New Trial/Remittitur

19 Naturally Vitamin contends that the jury award of $500,000 on the breach of implied
20 contract claim, $1.5 million on the right of publicity claim, and $800,000 on the Lanham Act
21 claim are excessive and speculative, are not supported by the evidence, and warrant a new
22 trial.  In the alternative, Naturally Vitamin moves for a remittitur of damages.

23 Where an award of damages is "grossly excessive or monstrous, clearly not supported
24 by the evidence, or only based on speculation or guesswork, and gives rise to an inference
25 that 'passion and prejudice' tainted the jury's finding of liability, a new trial may be in order."
26 Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers Local 287, 175 F.3d 680,
27 689 (9th Cir. 1999) (internal quotations omitted).  However, "[w]here there is no evidence
28 that passion and prejudice affected the liability finding, remittitur is an appropriate method

1
2
of reducing an excessive verdict." Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir. 1987).

3
4
5
6
7
8
9
10
11
12
13
There is no evidence that the liability determination was in any way tainted by passion or prejudice and therefore we deny Naturally Vitamin's motion for a new trial on this basis. Although Naturally Vitamin argues that Roth's counsel improperly referred to its net worth and profits in order to inflame the jury, we have already ruled that any harm caused by reference to tax returns or to an exhibit not in evidence is harmless in light of the overwhelming independent weight of the evidence presented at trial. Tr. at 810. We nevertheless agree that the damages award is excessive and therefore we deny the motion for a new trial, conditional on Roth's acceptance of a remittitur. See Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir. 1983) (holding that a prevailing party is given the option of either submitting to a new trial or accepting a reduced amount of damage which the court considers justified).

### A.  Breach of Implied Contract

15
16
17
18
19
As previously discussed, Roth asserted a breach of an implied contract claim, contending that he agreed to participate in a videotaped interview for use in the Arthritis Foundation's televent in exchange for Naturally Vitamin's $10,000 contribution to the Arthritis Foundation. Roth participated in the interview, but Naturally Vitamin failed to make the contribution until just days prior to trial.

20
21
22
23
24
25
26
27
28
Apparently acknowledging that he was paid $400.00 per hour for participating in the interview, see Trial Exhibit 121, and that on the eve of trial Naturally Vitamin contributed $10,000 to the Arthritis Foundation, Roth now argues that the $500,000 awarded for breach of implied contract relates "solely [to] Defendants' two-year unauthorized use of the Roth Segment on its website." Response to Motion for New Trial at 6 (doc. 175). Roth contends that the "value of his services" includes not only compensation for the single use of the Roth Segment in the Arthritis televent, for which he's now been fully compensated, but also the value of Naturally Vitamin's ongoing, unauthorized use of the Roth Segment beyond the televent. He postulates that the jury may have compensated him at a rate of $400.00 per hour

- 4 -

for each hour that the video was displayed on defendants' website without his permission. These damages, however, go far beyond those damages that "resulted naturally and directly from [Naturally Vitamin's] breach," see Jury Instructions at 10, and therefore are not appropriate contract damages. Moreover, compensation for the unauthorized use of the video segment is included in both the right of publicity and Lanham Act claims and is therefore duplicative recovery.

Roth received payment for his participation in the interview and Naturally Vitamin made the $10,000 donation, albeit on the eve of trial and four years late. Although Roth has now been fully compensated under the implied contract, there is no question that Naturally Vitamin breached the agreement. Therefore, we conclude that Roth is entitled to nominal damages and we order a remittitur of the breach of implied contract damages to $1.00.

### B. Breach of Right of Publicity and Lanham Act

The jury awarded Roth $1.5 million on his right of publicity claim and $800,000 on the Lanham Act claim. There is significant overlap in the elements of damages for these claims.[2] Roth contends, and we agree, that the only damage component unique to the right of publicity award is emotional distress damages. In other words, the $700,000 difference between the damages awarded on the right of publicity and the Lanham Act claims is attributable to emotional distress damages. Response to Motion for New Trial at 7 (doc. 175). The remaining $800,000 award is therefore attributable to reputational damages and Roth's pecuniary loss resulting from the wrongful appropriation.

### 1. Emotional Distress Damages

The only evidence presented to support the jury's award of $700,000 for emotional distress damages was Roth's own testimony that he has "had considerable pain and suffering associated with this," and his "health, which involves heart disease and hypertension, are very responsive to stress and the unhappiness [he's] felt these past few years." Tr. at 383-84.

---

[2]We instructed the jury that they should separately determine the damages for each of the three claims and that we would later modify the damages award to eliminate any duplicative recovery. Tr. at 800-01.

- 5 -

He further claimed that he has "been in the hospital twice this year now, both times for very serious related heart matters." Tr. at 220-21. Roth presented no evidence corroborating the existence of any of his alleged injuries, but instead relied solely on his own testimony. This evidence, viewed in the light most favorable to Roth, is clearly insufficient to support a damage award of $700,000. While we consider the amount to be generous, we accept Naturally Vitamin's characterization of the evidence as reasonably supporting an award of $100,000 for emotional distress or injury to Roth's peace, happiness or feelings. See Reply in Support of Motion for New Trial at 7, 8 (doc. 187). Accordingly, we order a remittitur of emotional distress damages to $100,000.

### 2. Pecuniary Loss

Based on Roth's own calculation, the balance of the damage award, or $800,000, relates to injury to Roth's reputation and pecuniary loss resulting from the misappropriation. He contends that the bulk of this amount, or $500,000, is explained as a reasonable estimate of the value of the extended, unauthorized use of Roth's image and statements on Naturally Vitamin's website for approximately two years. Response to Rule 50 Motion at 4-5 (doc. 182). In addition, Naturally Vitamin is alleged to have wrongfully used Roth's name, image, and statements in a number of press releases and other publications, all suggesting that Roth endorsed Naturally Vitamin's products.

We recognize the special solicitude toward proof of damages where the defendant's wrongful conduct has prevented a more precise computation. In such situations, the jury is required to make a just and reasonable estimate of the actual damages. See Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563-65, 51 S. Ct. 248, 250-51 (1931) (reasoning that "any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim"); Murphy Tugboat Co. v. Crowley, 658 F.2d 1256, 1260 (9th Cir. 1981).

Roth contends that Naturally Vitamin wrongfully used his name and image in a manner that he would never have authorized, and that therefore it is impossible to place a dollar amount on the value of those services. He presented evidence that he customarily

charges $400.00 an hour for consulting services, Tr. at 222; that he could garner $10,000 donations to the Arthritis Foundation for one-time video appearances, Tr. at 154; and that his annual consulting income was in the "hundreds of thousands" of dollars, Tr. at 222.

Based on this evidence, the jury could have reasonably concluded that Roth would have charged a considerable consulting fee in exchange for the use of his name and image, and his participation as a spokesperson for Naturally Vitamin's products. Nevertheless, we conclude that the jury's award of $500,000 for pecuniary loss relating to the misappropriation of Roth's image is excessive and cannot be supported by the evidence. There is no evidence to support a conclusion that Roth could earn half a million dollars in fees for an endorsement or other association with any one client. Even affording special solicitude toward proof of damages, this award is neither a just nor reasonable estimate of Roth's actual damages. Therefore, we reduce the award for Roth's pecuniary loss to $250,000.

### 3. Damage to Reputation

It follows that the remaining $300,000 awarded by the jury is attributable to the injury to Roth's reputation. The only evidence presented to establish reputation damage is Roth's own testimony that "[t]here has been an important impact upon companies that . . . have simply not followed up on e-mails and phone calls ever since this has happened . . . . I've lost significant consultive support that I previously had as a result of this." Tr. at 221-22. He stated that "McNeil Consumer, which [he has] worked with and spoken for many times, suddenly wasn't contacting [him] anymore." Tr. at 383. Dr. Ehrlich testified that if a company was to assume that Roth supported Naturally Vitamin's use of his name and image, it would not hire him. Tr. at 412. Roth also testified, however, that he "continue[s] to publish and . . . [has] a longstanding reputation in rheumatology." Tr. at 383-84. He testified that he does not know why certain companies no longer contact him, id., and does not know whether these companies are even aware of the Naturally Vitamin website or press releases, Tr. at 380, 385.

This evidence is insufficient to support the jury's award for reputation injury. While it is reasonable to assume that Roth's reputation was damaged by information improperly

linking him to Naturally Vitamin on the internet and via distribution of information to "rheumatologists at meetings across the country," Tr. at 460, any impact in this "close knit group," id., would be minimal. Without any corroborating evidence that Roth suffered injury to his reputation as a result of the misappropriation, we reduce this award to $10,000. Any other amount cannot be supported as a just and reasonable estimate of the actual damages.

### C. Summary

In sum, we conclude that the jury's awards on the three claims are cumulative except to the extent of $1.5 million. We also conclude that the damages are excessive and are not supported by the evidence. Therefore, we deny Naturally Vitamin's motion for a new trial conditional on Roth accepting a remittitur of the total award to $360,001 (doc. 158).

### III – Roth's Motion to Amend the Judgment

In his motion to amend the judgment pursuant to Rule 52(b), Fed. R. Civ. P., Roth contends that he is entitled to an award of up to three times the amount of actual damages awarded on the Lanham Act claim. In assessing damages under the Lanham Act, "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). While the treble damages provision "serve[s] as a convincing deterrent," Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1274 (9th Cir. 1982), an overarching consideration is that the award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

We have already reduced the damages awarded by the jury under the Lanham Act to $250,000. This amount adequately compensates Roth for all actual damages he sustained as a result of the violation of the Act. Any additional amount would constitute a penalty and is therefore proscribed by the Act. We deny Roth's motion to amend the judgment to include treble damages (doc. 158).

## IV – Roth's Motion for Attorneys' Fees

### A. Contract Claims

Roth argues that he is entitled to attorneys' fees under Counts I and III of the complaint for breach of contract and breach of an implied contract. Naturally Vitamin concedes that Roth is entitled to attorneys' fees under Count I in the amount of $4,267.00. Therefore, we award fees to Roth under Count I in the amount of $4,267.00.

Roth also contends that he is entitled to fees under Count III, breach of implied contract, pursuant to A.R.S. § 12-341.01, which provides that a court may award reasonable attorneys' fees to a successful party in an action arising out of contract.[3] We reduced the award under this claim to nominal damages of $1.00 based on evidence that Roth has now been fully compensated under the implied contract. See Section II(A), supra. Nevertheless, Roth is the prevailing party for purposes of A.R.S. § 12-341.01. Naturally Vitamin cannot avoid payment of attorneys' fees by paying its debt on the eve of trial, four years after the debt was due and after more than two years of litigation. See McEvoy v. Aerotek, Inc., 201 Ariz. 300, 303, 34 P.3d 979, 982 (Ct. App. 2001) (recognizing a "well-established policy that '[t]he determination of who is the prevailing or successful party is based upon success upon the merits, not upon damages, and a party may be the prevailing party although he recovers no award of damages' ") (quoting 20 C.J.S. Costs § 11 (1990)).

In evaluating a motion for fees under A.R.S. § 12-341.01, we consider a number of factors, including (1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled; (3) whether assessing fees would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) whether the legal question was novel; and (6) whether the award would

---

[3] We note that where two legal theories are intertwined, recovery of attorneys' fees under A.R.S. § 12-341.01(A) is available as long "as the cause of action in tort could not exist but for the breach of contract." Sparks v. Republic Life Ins. Co., 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982). Naturally Vitamin does not argue that this is not a case "arising out of a contract"; therefore, we assume that § 12-341.01 applies in the present case.

- 9 -

discourage other parties with tenable claims from litigating them. Associated Indem. Corp. v. Warner, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

Applying the Warner factors to this case, we first find that Naturally Vitamin's defense of the contract claims was not meritorious–a conclusion supported in part by Naturally Vitamin's payment of the amount due on the eve of trial. Nor was Naturally Vitamin's defense of the infringement claims entirely meritorious. As we conclude below, the fact of infringement was clear. Second, there was no possibility of settlement in this case. Third, there is no evidence that assessing attorneys' fees against Naturally Vitamin will result in undue hardship. Fourth, Roth did not prevail on two of the six counts asserted in the complaint, both of which were minor claims or alternate legal theories to the successful claims. Fifth, the legal questions presented with respect to the right of publicity and false endorsement under the Lanham Act are relatively novel legal questions; the legal questions related to the contract claims are not. Finally, there is no indication that a fee award in this case will discourage other litigants from advancing tenable claims. Considered together, the overall balance of factors weighs in favor of awarding attorneys' fees to Roth, and accordingly we grant fees on this basis.

### B. Lanham Act Claim

Roth alternatively contends that he in entitled to attorneys' fees under the Lanham Act, which permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). A Lanham Act case is exceptional "where the infringement is willful, deliberate, knowing or malicious." Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003). The determination whether a Lanham Act case is "exceptional is a question of law for the district court, not the jury." Watec Co. v. Liu, 403 F.3d 645, 656 (9th Cir. 2005).

In Earthquake Sound Corp., the court found a case "exceptional" where the question of trademark infringement was "not close," and the "total picture . . . was one of deliberate, willful infringement." 352 F.3d at 1218-19. Likewise, in this case, the question of infringement is not close and sufficient evidence exists in the record to support a conclusion

- 10 -

that Naturally Vitamin's wrongful acts were willful, deliberate and in bad faith. Evidence showed that Naturally Vitamin used the Roth Segment without Roth's permission for almost two years, and that Naturally Vitamin intentionally and repeatedly created the false impression that Roth's study of Phlogenzym supported the efficacy of Naturally Vitamin's product. Naturally Vitamin knowingly, intentionally, deliberately, and repeatedly linked Roth's image, statements, and persona with its own products, for the purpose of creating the false impression that Roth was endorsing its product. We conclude that this is an exceptional case under 15 U.S.C. § 1117(a) and that Roth is therefore entitled to attorneys' fees on this basis.[4]

Naturally Vitamin does not challenge the reasonableness of the claimed fees. Roth's lawyers submitted billing statements for professional fees totaling $252,025. Under contingency fee agreements, Roth's lawyers are entitled to one-third of the amount actually awarded. Therefore, we award attorneys' fees in the amount of $120,000 on Counts III, V, and VI, and $4,267 on Count I.

Roth's lawyers also request non-taxable costs in the amount of $21,257.50. Naturally Vitamin objects to the claimed costs, contending that non-taxable costs are not available under A.R.S. § 12-341.01. We agree. See Ahwatukee Custom Estates Mgt. Ass'n v. Bach, 193 Ariz. 401, 404, 973 P.2d 106, 109 (1999) (holding that a prevailing party is not entitled to non-taxable costs under A.R.S. § 12-341.01). We also conclude that non-taxable costs are not recoverable under the Lanham Act. In Twentieth Century Fox Film Corp. v. Entm't

---

[4] Our holding is consistent with our granting of defendants' motion for judgment as a matter of law on the claim of punitive damages. See Tr. at 656-57. Under Arizona law, punitive damages are appropriate only when there is a showing by clear and convincing evidence that "defendant's wrongful conduct was guided by evil motives." Rawlings v. Apodaca, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). In other words, the evidence must show that the defendant intended to injure the plaintiff, or consciously and deliberately disregarded the likelihood of unjustified and significant damage to him. This standard is more demanding than that necessary to show an "exceptional case" under the Lanham Act. There was no evidence that Naturally Vitamin acted with the intention of injuring Roth or otherwise acted knowing that its conduct was likely to cause significant, unjustified damage.

Distrib., 429 F.3d 869, 884-85 (9th Cir. 2005), the court allowed non-taxable costs where the Copyright Act specifically provided for recovery of "full costs."  See 17 U.S.C. § 505. Absent such express congressional intent, the prevailing party is limited to those costs set forth in 28 U.S.C. §§ 1920 and 1821.  Id. at 885 (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987)).  Therefore, we deny Roth's motion for non-taxable costs.

Based on the foregoing, we award attorneys' fees in the total amount of $124,267 and deny non-taxable costs.

## V.  Conclusion

**IT IS THEREFORE ORDERED DENYING** defendants' renewed Rule 50 motion for judgment as a matter of law (doc. 204), and **DENYING** defendants' motion to supplement its Rule 50 motion (doc. 201).

**IT IS FURTHER ORDERED DENYING** defendants' motion for a new trial conditioned on Roth's acceptance of a remittitur of the award to $360,001 (doc. 159).

**IT IS FURTHER ORDERED DENYING** Roth's motion to alter or amend the judgment (doc. 158).

**IT IS FURTHER ORDERED GRANTING** Roth's motion for attorneys' fees in the amount of $124,267 and **DENYING** non-taxable costs (doc. 158).

Plaintiffs shall have fifteen days from the filing date of this order to file their acceptance or rejection of the remittitur.  Some would see this as an action by an overreaching, opportunistic plaintiff against a rigid, unsympathetic defendant, both of whom are involved in the sale or marketing of products of doubtful social utility.  The remittitur is a fair compromise and we urge the plaintiffs to accept it.

DATED this 5th day of July, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge